**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

KIEONA MANNING,               )
                              )
                Plaintiff,    )
                              )
        v.                    )          1:24CV894
                              )
MAPLE GROVE HEALTH & REHAB CENTER, )
                              )
                Defendant.    )

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on Plaintiff's Motion to
Compel (Docket Entry 28).  For the reasons that follow, the Court
will grant in part and will deny in part the instant Motion.

## INTRODUCTION

Plaintiff "su[ed Defendant] for denying [her a] position as a
CNA." (Docket Entry 4 ("Amended Complaint") at 1.)[1]  According to
the Amended Complaint, Plaintiff met "all the requirements listed
on the job summary" (id.); yet – after she "showed [Defendant her
disability-related, lifting] restrictions" (id. at 2; see also id.
("I was diagnosed with [l]umbar spine radiculopathy, [d]egenerative
[d]isc [d]isease, [and s]pinal [s]tenosis L4 & L5.  This . . .
breaks down to [s]ciatica . . . .")) – Defendant "told [her that,]
'due to [her] restrictions[, she] could not be hired'" (id.),
despite the fact that "[t]he only accommodation [she] would have
needed would have been physical assistance when getting someone up,

_____

[1] Pin cites refer to the page numbers appearing in the footer
appended to the document upon docketing in the CM/ECF system.

having a lift to help with getting a person up, or modified schedules when [her s]ciatica is inflamed" (id.). The Amended Complaint "seek[s] $13,275.20 due to [Defendant] not hiring [Plaintiff] for having [disability-related] restrictions and not trying to accommodate [her] in any way." (Id. at 4; see also id. at 3 (invoking "Title I of the ADA").)

Defendant answered (see Docket Entry 13) and discovery commenced (see Text Order dated July 29, 2025 ("adopting" Docket Entry 24); see also Docket Entry 24 at 1 (proposing that "'commencement date' of discovery will be July 28, 2025" (bold font omitted))). On September 25, 2025, Plaintiff filed the instant Motion, seeking relief because Defendant objected to her discovery demands as "'vague and ambiguous', 'unduly burdensome', and 'seeking information not relevant to a claim or defense raised in this action' several of [sic] times with given [sic] slack answers or not answering the questions at all." (Docket Entry 28 at 1.)[2]

_____

[2] Plaintiff did not file a brief in support of the instant Motion (see Docket Entries dated Sept. 25, 2025, to present (showing no such brief)), contrary to the requirements of the Local Rules, see M.D.N.C. LR 7.3(a) ("All motions, unless made during a hearing or at trial, . . . shall be accompanied by a brief except as provided in section (j) of this rule.") & (j) (exempting certain motions from briefing requirement, but not discovery motions made without agreement between the parties to resolution via expedited procedures or consent by the opposing party to the requested relief). Because (A) Plaintiff did include within the instant Motion some argument and authority of the sort a brief would contain (see Docket Entry 28 at 1-2 (discussing Federal Rule of Civil Procedure 26(b)(1)'s definition of scope of discovery and presenting arguments as to impropriety of Defendant's objections to
(continued...)

Defendant has responded (see Docket Entry 31) and Plaintiff has replied (see Docket Entry 34).

## DISCUSSION

The instant Motion broadly "request[s that Defendant] provide proper, complete, and sworn responses in how and where did they get their answers to [Plaintiff's] interrogatories and production." (Docket Entry 28 at 2; see also id. (demanding that Defendant "stop using the lawyer tactics by saying '[Defendant] objects', 'vague and ambiguous', 'unduly burdensome', and 'seeking information not relevant to a claim or defense'").) "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection," Fed. R. Civ. P. 37(a)(3)(B), including when "a party fails to answer an interrogatory," Fed. R. Civ. P. 37(a)(3)(B)(iii), or "fails to produce documents," Fed. R. Civ. P. 37(a)(3)(B)(iv). However, "[t]he [C]ourt . . . will only address specific interrogatories or requests for production of documents which are brought before the [C]ourt on a motion to compel . . . ." DIRECTV, Inc. v. Knowles, No. 7:03CV163, 2005 WL 8159565, at *4

---

[2](...continued)
three interrogatories)) and (B) Defendant did not raise Plaintiff's failure to file a brief in Defendant's response opposing the instant Motion (see Docket Entry 31 at 1-5 (making no mention of missing brief)), the Court will not exercise its discretion to summarily deny the instant Motion based on Plaintiff's violation of the briefing rule, see M.D.N.C. LR 7.3(k) ("A motion unaccompanied by a required brief may, in the discretion of the Court, be summarily denied."). Plaintiff should understand that any future non-compliance with the briefing requirement likely will result in the summary denial of any motion lacking a required brief.

3

(E.D.N.C. Jan. 21, 2005) (unpublished) (emphasis added); see also, e.g., McKelvey v. Western Reg'l Jail, No. 3:13CV22206, 2015 WL 2144668, at *6 (S.D. W. Va. May 7, 2015) (unpublished) (denying motion to compel because moving party "failed to identify the specific answers to interrogatories that he believe[d we]re incomplete or objectionable"); Hart v. Nationwide Mut. Fire Ins. Co., 270 F.R.D. 166, 169 (D. Del. 2010) ("In [his m]otion [t]o [c]ompel, [the p]laintiff makes only generalized arguments about [the d]efendant's [discovery] responses, and the [c]ourt will not undertake a review of each of the [plaintiff's discovery] requests without more specific guidance from [the p]laintiff on what responses [the plaintiff] is challenging and why.").[3]

In terms of particular discovery items for which Plaintiff would have the Court compel some further response from Defendant, the instant Motion identifies two interrogatories by number, i.e., "interrogatory number five" (Docket Entry 28 at 1; see also id. (describing interrogatory number five as "ask[ing] Defendant to define the term 'post-offer, pre-hire drug test'")) and

---

[3] To the extent the instant Motion seeks to compel Defendant to respond to Plaintiff's "revised request for production" (Docket Entry 28 at 1), served "[o]n September 5, 2025" (id.), and/or her "revised [i]nterrogatories" (id.), served "[o]n September 11, 2025" (id.), the Court agrees with Defendant that "[Plaintiff] prematurely filed th[at aspect of the instant M]otion . . . on September 25, 2025" (Docket Entry 31 at 2). See Fed. R. Civ. P. 33(b)(2) (generally allowing 30 days for service of interrogatory answers and objections); Fed. R. Civ. P. 34(b)(2)(A) (generally allowing 30 days for document request responses).

"interrogatory number eight" (id. at 2; see also id. (describing interrogatory number eight as "ask[ing] Defendant Have Jean Williams, Kimberly Price, Tammy Johnson, Tawanna Craft, or Scott (no first name) ever worked on the floor to help a CNA? If so what did you do to help a CNA?")). The instant Motion also appends a document labeled "15 Interrogatories" (id. at 4),[4] which contains a corresponding interrogatory number five of "Define post offer - pre hire drug test" (id.) and a corresponding interrogatory number eight of "Have Jean Williams, Kimberly Price, Tammy Johnson, Tawanna Craft, or Scott (no first name) ever worked on the floor to help a CNA? If so what did you do to help a CNA?" (id.). Additionally, the instant Motion quotes a third interrogatory without giving a number: "I asked a simple question 'who pulled the resume and where did they pull it from?[] A. Who wrote on the resume? B. What is it saying?[']" (Id. at 2.) That language corresponds to interrogatory number four from the instant Motion's appended document labeled "15 Interrogatories" (id. at 4). (See id. ("4. Who pulled the resume and where did they pull it from[?] A. Who wrote on the resume? B. What is it saying?").)

---

[4] After the list of "15 Interrogatories" (Docket Entry 28 at 4) – most of which consist of multiple inquiries and/or contain multiple sub-parts (see id. at 4-5) – that appended document continues, under the heading "Plaintiff [sic] Request for Production of Documents" (id. at 5), with another 15-numbered list (see id.), followed by an address block for Plaintiff and a notation of delivery on "July 29, 2025 @ 4:42pm [by e-mail] to [Defendant's counsel]" (id. at 6).

5

As further support, Plaintiff included with the instant Motion "Defendant['s ] Answers to Plaintiff's Interrogatories" (id. at 14 (all-caps and bold font omitted)), showing that, for interrogatory numbers four, five, and eight, Defendant gave these answers:

> 4.  Who pulled the resume and where did they pull it from
>       A.  Who wrote on the resume?
>       B.  What is it saying?
>
> ANSWER:  [Defendant] objects to this Interrogatory as vague and ambiguous and as seeking information not relevant to any claim or defense raised in this action. Subject to and without waiving any objection, and pursuant to [Federal] Rule [of Civil Procedure] 33(d), please see document Bates-labeled [Defendant] 000013-16.
>
> 5.  Define post offer - pre hire drug test?
>
> ANSWER:  [Defendant] objects to this Interrogatory as vague and ambiguous and as seeking information not relevant to any claim or defense raised in this action. Plaintiff was drug tested, but the results of her drug test are not material in this action as she was otherwise not qualified for the position at issue.
>
>       . . . .
>
> 8.  Have Jean Williams, Kimberly Price, Tammy Johnson, Tawanna Craft, or Scott (no first name) ever worked on the floor to help a CNA? If so what did you do to help a CNA?
>
> ANSWER:  [Defendant] objects to this Interrogatory as seeking information not relevant to a claim or defense raised in this action.  Whether a given staff member of [Defendant] has performed a task has no bearing on Plaintiff's qualifications for the job at issue in her failure to hire claim.

(Id. at 17 (bold font and underscoring omitted).)

Regarding interrogatory number four, the instant Motion (A) asserts that Defendant's above-quoted "answer showed how

6

[Defendant] went around in answering a simple question" (id. at 2), (B) speculates that, in responding, Defendant just "asked the chief human resources office or avp of employee relations who did not know anything about [the events in question]" (id.), (C) expresses Plaintiff's lack of "belie[f that Defendant's] information that was given was given in good faith effort" (id.), and (D) accuses Defendant of "playing dodge ball with answering [Plaintiff's] question" (id.), all of which supposedly "shows how [Defendants'] attorney[s are] using their power with lies and avoiding to answer [Plaintiff's] interrogatories" (id.).  In so arguing, the instant Motion does not mention the "document Bates-labeled [Defendant] 000013-16" (id. at 17), much less explain why Defendant's direction of Plaintiff to that document failed to suffice under Federal Rule of Civil Procedure 33(d).  (See id. at 2.)

Defendant, for its part, did not directly address interrogatory number four in responding to the instant Motion. (See Docket Entry 31 at 1-5.)[5]  Plaintiff's reply likewise neglects

_____

[5] Defendant's "Legal Argument" (Docket Entry 31 at 2 (all-caps and bold font omitted)) opposing the instant Motion contests:

1) Plaintiff's criticism of Defendant's objections (without defending its objection to interrogatory number four) (see id.);

2) the overbreadth and/or irrelevance of some of Plaintiff's discovery requests (without specific reference to interrogatory number four) (see id. at 2-4);

3) Plaintiff's service of more than the limit of 15 interrogatories, considering all the discrete interrogatory sub-
                                                    (continued...)

7

to discuss interrogatory number four (or even to note the failure of Defendant's response to do so). (See Docket Entry 34 at 1-3.) Under these circumstances, the Court exercises its discretion to deny without prejudice Plaintiff's request for relief as to interrogatory number four. See generally Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995) ("afford[ing ] district court[s] substantial discretion in managing discovery"); see also Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (unpublished) (Schroeder, J.) ("A party should not expect a court to do the work that [the party] elected not to do.").

Turning to interrogatory number 5, the instant Motion makes this argument:

---

[5](...continued)
parts and additional interrogatories masquerading as document requests or as revisions to prior interrogatories (see id. at 3-4; see also Docket Entry 24 at 1 (proposing limit of "15 interrogatories, including subparts" (bold font omitted)); Text Order dated July 29, 2025 ("adopting" Docket Entry 24)), which would not invalidate interrogatory number four (or five or eight) as the total number of inquiries within interrogatory numbers one through eight warranting treatment as separate interrogatories does not appear to exceed 15 (see Docket Entry 28 at 4); and

4) Plaintiff's resort to "ad hominem attacks on [Defendant] and its counsel" (Docket Entry 31 at 5 (italics omitted)), which would not require the Court to reject an otherwise valid request for relief, even though such attacks "do nothing to advance the litigation," United States for the Use and Benefit of Arrow Concrete Co. v. Ohio Farmers Ins. Co., 981 F. Supp. 443, 445 n.2 (S.D. W. Va. 1997); see also id. at 445 & n.2 (cautioning litigants against use of over-heated rhetoric while still resolving related motion on merits).

[I]nterrogatory number five (5) ask[s] Defendant to define the term "post-offer, pre-hire drug test." Defendant objected as vague, ambiguous, and irrelevant, and further asserted that . . . Plaintiff['s] drug test results are "not material." This objection is improper. [Interrogatory number five] did not ask about the results, but rather for Defendant to explain its own definition and policy concerning post offer, pre hire drug testing. Such information is directly relevant under Fed[eral] R[ule of] Civ[il] P[rocedure] 26(b)(1) to whether Defendant followed its own hiring procedures, whether . . . Plaintiff was treated consistently with other applicants, and whether Defendant's stated reasons for not hiring . . . [P]laintiff are pretextual. Defendant should be compelled to provide a substantive answer and produce responsive documents.

Defendant['s] objection is improper because [interrogatory number five] did not ask about the results at 1ˢᵗ but now [Plaintiff] would like to know the results. Defendant is arguing the merits by saying [Plaintiff] was not qualified anyway so it does not matter. In discovery a defendant cannot withhold information because the[ defendant] think[s that information] will not help [the plaintiff]. [Interrogatory number five] is relevant due to the [fact that the] definition and timing of a post offer and pre hire drug test goes to whether [Defendant] followed [its] own hiring process, whether [Plaintiff] was treated differently than others, whether [Defendant] improperly tested [Plaintiff] before a bona fide offer, or whether [Defendant's] stated reason for not hiring [Plaintiff is] shifting [and] pretextual.

(Docket Entry 28 at 1.)

This argument suffers from multiple, facially obvious flaws. "To begin, [i]nterrogatory [number five] does not require the production of documents," Morley v. Energy Serv. of Am. Corp., No. 3:22CV375, 2023 WL 3167438, at *1 (S.D. W. Va. Apr. 28, 2023) (unpublished); see also Speed RMG Partners, LLC v. Arctic Cat Sales Inc., No. 20CV609, 2021 WL 5087362, at *12 (D. Minn. Jan. 5, 2021)

9

(unpublished) (emphasizing that party "is not required to produce documents in response to an interrogatory"). The Court therefore rejects Plaintiff's assertion that, for interrogatory number five, "Defendant should be compelled to . . . produce responsive documents" (Docket Entry 28 at 1). Similarly, the plain language of interrogatory number five's demand for Defendant to "[d]efine post offer – pre hire drug test" (id. at 4) did not require "Defendant to explain its . . . policy concerning post offer, pre hire drug testing" (id. at 1). Simply put, giving one's definition of a term does not necessitate "explain[ing one's] . . . policy concerning [the term]" (id.). See https://dictionary.cambridge.org /dictionary/english/define (defining "define" as "to say what the meaning of something, especially a word, is" (bold font omitted)) (last visited Nov. 20, 2025).

Next, Plaintiff has contended that Defendant wrongly relied on the immateriality of the results of her drug test in objecting to interrogatory number five, because she "did not ask about the results" (Docket Entry 28 at 1),[6] but that contention misses the point. Defendant noted the immateriality of the drug test results

---

[6] Notwithstanding Plaintiff's above-quoted admission, the instant Motion states that "now [she] would like to know the results" (Docket Entry 28 at 1); however, "[t]he [C]ourt cannot compel [D]efendant[] to provide such information if [P]laintiff never made any appropriate request for it," Grabek v. Dickinson, No. CIV S-10-2892, 2012 WL 113799, at *1 (E.D. Cal. Jan. 13, 2012) (unpublished); accord, e.g., White v. City of Grand Rapids, No. 1:19CV877, 2020 WL 13750043, at *1 (W.D. Mich. July 20, 2020) (unpublished).

10

to explain the irrelevance of Plaintiff's inquiry into Defendant's definition of "post offer – pre hire drug test" (id. at 4). In sum, Defendant's response to interrogatory number five effectively binds Defendant to the position that Defendant did not rely on any such drug test to deny Plaintiff employment and, as a result, Defendant's definition of that drug test holds no apparent relevance in this case, as that definition could not affect the resolution of Plaintiff's claim that Defendant unlawfully refused to employ her due to her disability. See Republican Party of N.C. v. Martin, 136 F.R.D. 421, 425 (E.D.N.C. 1991) ("[W]hile 'the requirement of relevancy should be construed liberally and with common sense, rather than in terms of narrow legalisms, no one would suggest that discovery should be allowed of information that has no conceivable bearing on the case.'" (internal brackets omitted) (quoting C. Wright & A. Miller, Federal Prac. & Proc.: Civil § 2008, at 45-46 (1970))); see also, e.g., U.S. Home Corp v. Settlers Crossing, LLC, Civ. Action No. 08-1863, 2013 WL 5530282, at *7 (D. Md. Oct. 3, 2013) (unpublished) ("[I]f the discovery sought has no bearing on an issue of material fact . . . it is not relevant . . . ." (internal quotation marks omitted)).[7]

---

[7] Stated another way, Plaintiff and Defendant have agreed that the drug test did <u>not</u> cause Defendant to deny Plaintiff employment, albeit for different reasons, i.e., Plaintiff has asserted that Defendant did not employ her due to her non-drug-test-related disability (see Docket Entry 4 at 1-4) and Defendant has countered that it did not employ Plaintiff due to her non-drug-test-related

(continued...)

The instant Motion nonetheless insists that interrogatory number five:

> is relevant due to the [fact that the] definition and timing of a post offer and pre hire drug test goes to whether [Defendant] followed [its] own hiring process, whether [Plaintiff] was treated differently than others, whether [Defendant] improperly tested [Plaintiff] before a bona fide offer, or whether [Defendant's] stated reason for not hiring [Plaintiff is] shifting [and] pretextual.

(Docket Entry 28 at 1; see also id. (arguing that interrogatory number five "is directly relevant . . . to whether Defendant followed its own hiring procedures, whether . . . Plaintiff was treated consistently with other applicants, and whether Defendant's stated reasons for not hiring . . . [P]laintiff are pretextual").)

But Plaintiff has not explained how Defendant's definition of that drug test – as opposed to information (not solicited by interrogatory number five) about (A) the timing of the drug test's administration to Plaintiff and others, (B) Defendant's policy concerning that drug test, and (C) Defendant's stated reasons for not hiring Plaintiff – would reveal "whether [Defendant] followed [its] own hiring process" (id.), "treated [her] differently than others" (id.), "improperly tested [her] before a bona fide offer" (id.), and/or "stated [a] reason for not hiring [her that]

_____

[7](...continued)
failure to "qualif[y] for the position" (Docket Entry 28 at 17 (bold font omitted)). In view of the parties' agreement that the drug test did not play a part in the employment decision, the definition of that drug test does not carry any clear significance to the resolution of this case.

12

shift[ed, showing] pretext[]" (id.).  (See id.; see also Docket
Entry 34 at 1-3 (making no mention of interrogatory number five).)
On the other hand, Defendant's response to the instant Motion does
not engage with Plaintiff's theory of relevance.  (See Docket Entry
31 at 1 (asserting that "Plaintiff served extraordinarily broad
initial discovery requests, most of which sought information and
documents completely irrelevant to any claim or defense in this
case" without analyzing any specific request), 2 (discussing
authority barring discovery "[f]ishing expeditions" and giving
example of "inquiries . . . seeking all communications relating to
[the p]laintiff" (internal brackets and quotation marks omitted)),
3 (describing "many of Plaintiff's requests and interrogatories
[as] so overly broad as to constitute fishing expeditions" but not
focusing on any particular request or interrogatory), 4 (arguing
that "majority of Plaintiff's interrogatories and document requests
are wholly irrelevant to the claims and defenses in this case" and
highlighting two document requests as examples).)

     "Traditionally, the party opposing discovery bears the burden
in a discovery dispute." Seamon v. Duke Univ., No. 1:15CV462, 2018
WL 1441267, at *3 (M.D.N.C. Mar. 21, 2018) (unpublished) (Webster,
M.J.); accord, e.g., Furr v. Jerinkin, No. 5:22CT3454, 2025 WL
2985897, at *2 (E.D.N.C. Sept. 16, 2025) (unpublished); South
Carolina State Conf. of the NAACP v. McMaster, 584 F. Supp. 3d 152,
159 (D.S.C. 2022) (Childs, J.); Syngenta Crop Prot., LLC v.

13

Willowood, LLC, No. 1:15CV274, 2016 WL 6783691, at *1 (M.D.N.C. Oct. 6, 2016) (unpublished) (Peake, M.J.). "That includes 'where the resisting party asserts that the discovery is irrelevant.'" Students for Fair Admissions, Inc. v. University of N.C., No. 1:14CV954, 2017 WL 11684866, at *2 (M.D.N.C. Aug. 9, 2017) (unpublished) (Webster, M.J.) (quoting United Oil Co. v. Parts Assocs., Inc., 227 F.R.D. 404, 411 (D. Md. 2005)); see also, e.g., United States v. Duke Energy Corp., No. 1:00CV1262, 2012 WL 1565228, at *8 (M.D.N.C. Apr. 30, 2012) (unpublished) (Osteen, C.J.) ("'[T]he burden of showing that the requested discovery is not relevant to the issues in the case is on the party resisting discovery.'" (quoting Flora v. Hamilton, 81 F.R.D. 576, 578 (M.D.N.C. 1978) (Gordon, C.J.))); Spell v. McDaniel, 591 F. Supp. 1090, 1114 (E.D.N.C. 1984) ("[T]he burden of showing that the requested discovery is not relevant to the issues in this litigation is clearly on the party resisting discovery."). The lack of argument by Defendant about interrogatory number five might loom large if "the [instant M]otion must be decided based upon th[at traditional allocation of the] burden of persuasion," United States v. Sanchez-Martinez, No. 13CR236, 2013 WL 3662871, at *4 (D. Colo. July 12, 2013) (unpublished). See generally United States v. Shamsid-Deen, 61 F.4th 935, 946 (11th Cir. 2023) ("In a close case, the burdens of production and persuasion can decide the case.").

14

The Court, however, must consider the fact that "[Federal] Rule [of Civil Procedure] 26(b)(1) was amended in 2015, regarding the scope of discovery in civil cases, in an effort to curb widespread abuse in discovery." Shackleford v. Vivint Solar Dev. LLC, Civ. Action No. 19-954, 2020 WL 3488913, at *5 (D. Md. June 25, 2020) (unpublished). Notably, that amendment "restore[d] proportionality to the forefront of the discovery process . . . ." Black v. West Va. State Police, Nos. 3:22CV96, 3:22CV203, 2023 WL 4834948, at *9 (S.D. W. Va. July 27, 2023) (unpublished); see also Fed. R. Civ. P. 26(b)(1) ("Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."). Accordingly, "[u]nder the 2015 amendments to [Federal] Rule [of Civil Procedure] 26(b)(1), . . . the inquiry is whether the discovery [sought] is relevant to any party's claim or defense and proportional to the needs of the case." Doe v. Cabell Cnty. Bd. of Educ., No. 3:21CV31, 2022 WL 288193, at *3 (S.D. W. Va. Jan. 31, 2022) (unpublished) (internal quotation marks omitted).

Moreover, "on its own, the [C]ourt must limit the . . . extent of discovery . . . if it determines that . . . the proposed discovery is outside the scope permitted by [Federal] Rule [of Civil Procedure] 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii) (emphasis added); see also Miller v. McWilliams, No. 1:20CV671,

15

2021 WL 11723046, at *1-2 (E.D. Va. Mar. 8, 2021) (unpublished) (acknowledging that, in opposition to motion seeking to compel discovery, resisting party "fail[ed] to substantiate [its discovery] objection with great specificity" but nevertheless denying motion and emphasizing independent "obligation of the [c]ourt to enforce [Federal] Rule [of Civil Procedure] 26's proportionality principle"); Cybernet, LLC v. David, No. 7:16CV16, 2018 WL 810142, at *5-7 (E.D.N.C. Feb. 9, 2018) (unpublished) (denying motion to compel in part based on judicial responsibility under Federal Rule of Civil Procedure 26(b)(2)(C)(iii) to police proportionality limits), aff'd, 954 F.3d 162 (4th Cir. 2020); Fed. R. Civ. P. 26 advisory committee notes, 2015 Amendment ("The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes."). And the applicable rule commentary expressly contemplates that the party requesting discovery must satisfy the Court that a disputed discovery demand falls within the proper scope of discovery (i.e., qualifies as both relevant and proportional): "A party claiming that a [discovery] request is important to resolve the issues [in a case] should be able to explain the ways in which the [requested] information bears on the issues as that party understands them." Fed. R. Civ. P. 26 advisory committee notes, 2015 Amendment (emphasis added).

16

Consistent with the foregoing authority, some judges in this circuit (including the now-Chief Judge of this Court) have begun to apply a burden-shifting approach to discovery disputes: "'The party seeking discovery has the [initial] burden to establish its relevancy and proportionality, at which point the burden shifts to the party resisting discovery to demonstrate why the discovery should not be permitted.'" Cook v. Wake Forest Univ. Baptist Med. Ctr., No. 1:20CV193, 2021 WL 620707, at *2 (M.D.N.C. Feb. 17, 2021) (unpublished) (Eagles, J.) (quoting Shackleford, 2020 WL 3488913, at *5); see also, e.g., Harris v. Vanderburg, No. 4:19CV111, 2020 WL 7319607, at *7 (E.D.N.C. Dec. 11, 2020) (unpublished) (focusing, in order denying compelled response, on requesting parties' failure "to explain why they need[ed requested] . . . information" rather than resisting party's showing); Machinery Sols., Inc. v. Doosan Infracore Am. Corp., 323 F.R.D. 522, 526 (D.S.C. 2018) (Childs, J.) ("While the party seeking discovery has the burden to establish its relevancy and proportionality, the party objecting has the burden of showing the discovery should not be allowed and doing so through clarifying, explaining and supporting its objections with competent evidence." (internal quotation marks omitted)); Eramo v. Rolling Stone LLC, 314 F.R.D. 205, 209 (W.D. Va. 2016) ("Where a prima facie showing of discoverability has been made by the party seeking discovery, the burden shifts to the resisting party to show . . . that the requested discovery (1) does not come within the broad

17

Case 1:24-cv-00894-WO-LPA   Document 41   Filed 11/20/25   Page 17 of 22

scope of relevance . . ., or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption of broad discovery." (internal ellipsis and quotation marks omitted)).

Here, the Court concludes that Plaintiff (A) has not adequately "explain[ed] the ways in which [interrogatory number five] bears on the issues [in this case]," Fed. R. Civ. P. 26 advisory committee notes, 2015 Amendment, and otherwise (B) has not satisfied (what some courts have called) her threshold "burden to establish [interrogatory number five's] relevancy and proportionality," Cook, 2021 WL 620707, at *2 (internal quotation marks omitted). For either or both of those reasons, the Court will not compel Defendant to make any further response to interrogatory number five; instead, "on its own, the [C]ourt must limit the . . . extent of discovery . . . [because] it [has] determine[d] that . . . [interrogatory number five] is outside the scope permitted by [Federal] Rule [of Civil Procedure] 26(b)(1)," Fed. R. Civ. P. 26(b)(2)(C)(iii), i.e., not "relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1), or (at a minimum) of insufficient relevance to qualify as "proportional to the needs of the case," id.

The preceding analysis leaves for decision Plaintiff's request for the Court to compel Defendant to answer interrogatory number eight: "Have Jean Williams, Kimberly Price, Tammy Johnson, Tawanna

18

Craft, or Scott (no first name) ever worked on the floor to help a CNA? If so what did you do to help a CNA?" (Docket Entry 28 at 4.) Rather than answer, Defendant "object[ed] to th[at i]nterrogatory as seeking information <u>not relevant</u> to a claim or defense raised in this action." (<u>Id.</u> at 17 (emphasis added).) Specifically, that objection reasons that information about "[w]hether a given staff member of [Defendant] has performed a task has no bearing on Plaintiff's qualifications for the job at issue in her failure to hire claim." (<u>Id.</u>) The instant Motion, in turn, rejoins that such "information is relevant because[, if] individuals outside of the CNA role performed CNA duties[, that (A) would] mean[ Defendant allowed] flexibility in roles" (<u>id.</u> at 2), and (B) would "[s]how a possible pattern of inconsistent job requirements" (<u>id.</u>), which could allow Plaintiff to "show [Defendant's reliance on a] pretextual reason for denying [her] employment" (<u>id.</u>), e.g., that "qualifications used to reject [her] were not consistently applied" (<u>id.</u>).

As detailed previously (in connection with interrogatory number five), the relevance-related arguments made in Defendant's response opposing the instant Motion deal with matters unrelated to Plaintiff's above-quoted rejoinder to Defendant's relevance objection to interrogatory number eight. (<u>See</u> Docket Entry 31 at 1-5.) Furthermore, the unrebutted theories advanced in the instant Motion about the potential significance of the information sought

19

by interrogatory number eight appear plausible (unlike Plaintiff's deficient explanation about the purported importance of the information solicited by interrogatory number five). As such, for interrogatory number eight, the Court will enter "an order compelling an answer," Fed. R. Civ. P. 37(a)(3)(B), and will <u>not</u> rule sua sponte that interrogatory number eight falls "outside the scope permitted by [Federal] Rule [of Civil Procedure] 26(b)(1)," Fed. R. Civ. P. 26(b)(2)(C)(iii). <u>See generally</u> <u>Black</u>, 2023 WL 4834948, at *6 ("The determination as to whether discovery violates [Federal] Rule [of Civil Procedure] 26(b)(2)(C) rests with the district court, and district courts 'have broad discretion in their resolution of discovery problems that arise in cases pending before them.'" (quoting <u>Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.</u>, 334 F.3d 390, 402 (4th Cir. 2003))).[8]

---

[8] In addition to seeking compelled answers to interrogatories four, five, and eight, Plaintiff voiced within the instant Motion a desire to "speak on [three] lie[s]" (Docket Entry 28 at 2):

1) "lie number one (1) '[Defendant] states that Jean Williams is unknown to [Defendant]' & 'All but Jean Williams, who is unknown to [Defendant]'" (<u>id.</u>);

2) "[l]ie number two (2) WOTC are completed at the point of a contingent offer" (<u>id.</u>); and

3) "number three (3) lie 'there is no Jean working for [Defendant]' during August 19, 2022" (<u>id.</u>).

The two internal quotations in item one above come from Defendant's answers to interrogatory number one (specifically its principal inquiry and subpart A). (<u>See</u> <u>id.</u> at 16.) In item two above, Plaintiff appeared to refer to Defendant's answer to
(continued...)

<u>CONCLUSION</u>

The instant Motion presents cognizable requests for relief regarding three interrogatories (interrogatory numbers four, five, and eight) served by Plaintiff. The present record does not permit a definitive determination about the sufficiency of Defendant's answer to interrogatory number four. Interrogatory number five falls outside the relevance and/or proportionality limits on the scope of discovery. Defendant failed to adequately respond to interrogatory number eight's relevant and proportional inquiry.

**IT IS THEREFORE ORDERED** that the instant Motion (Docket Entry 28) is **GRANTED IN PART AND DENIED IN PART**, in that Defendant shall

---

[8](...continued)
interrogatory number two (specifically subpart C). (<u>See id.</u>) The internal quotation in item three above comes from Defendant's answer to interrogatory number 13. (<u>See id.</u> at 18.) Plaintiff based her allegation that Defendant lied about its knowledge of Jean Williams and its employment of someone named Jean on "an email that states [f]acility address and Jean Williams – Interim Director of Nursing dated August 18, 2022." (<u>Id.</u> at 2 (apparently referencing <u>id.</u> at 30).) Plaintiff's charge that Defendant lied about the WOTC (work opportunity tax credit) evidently rests on her assertions that "[n]o contingent offer was made and the WOTC number was not written down." (<u>Id.</u> at 2; <u>see also</u> <u>id.</u> (discussing definitions of "contingent offer" and "contingent job offer").) The Court deems these "alleg[ations] that [D]efendant . . . lied in [its] interrogatory responses," <u>Evans v. Bamke</u>, No. 22CV1255, 2023 WL 7111245, at *1 (E.D. Wis. Oct. 27, 2023) (unpublished), "factual disagreement[s] for another day," <u>id.</u>, not matters suitable for resolution via a motion to compel, <u>see</u> <u>Cooper v. McGowan</u>, No. 17CV383, 2018 WL 2223671, at *5 (W.D. Wis. May 15, 2018) (unpublished) ("[The plaintiff] contends that . . . [the defendant] lied in response to [two] interrogatories . . . . [The plaintiff] can argue in his summary judgment briefing or at trial that [the defendant] is lying, but [the court] will not compel [the defendant] to respond to [the plaintiff's] interrogatories in a certain way.").

21

serve Plaintiff with a proper and complete answer to interrogatory number eight by November 26, 2025, but Plaintiff shall obtain no further relief (although the Court denies relief as to interrogatory number four without prejudice).[9]

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

November 20, 2025

---

[9] Because "the [instant M]otion is granted in part and denied in part, the [C]ourt . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the [instant M]otion." Fed. R. Civ. P. 37(a)(5)(C). Given that neither party requested expense-shifting (see Docket Entry 28 at 1-3; Docket Entry 31 at 1-5; Docket Entry 34 at 1-3), the Court exercises its discretion to decline to apportion reasonable expenses for the instant Motion, see generally Bryson v. CompuCom Sys., Inc., No. 1:19CV1121, 2021 WL 7184369, at *5 (M.D.N.C. Feb. 10, 2021) (unpublished) (Peake, M.J.) ("The Court has no indication here that either [p]arty was significantly more burdened by this motion than the other, so each will bear its own costs."); Harrison v. Carrington Mortg. Servs., LLC, No. 3:16CV14, 2017 WL 1612135, at *1 (W.D. Va. Apr. 28, 2017) (unpublished) (recognizing that, when "[Federal] Rule [of Civil Procedure] 37(a)(5)(C) applies, [] it is within the court's discretion whether to apportion expenses").